CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JAN 0 5 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 6:05-CR-00010 |
| v. | MEMORANDUM OPINION |
| CHARLES GILMAN LOWRY and CHARLES MONROE GROOMS, JR., | JUDGE NORMAN K. MOON |
| *Defendants.* | |

This matter is before the Court on Defendant Charles Lowry's December 12, 2005 Motion to Dismiss Superceding Indictment. In a December 20, 2005 motion, Co-Defendant Charles Grooms adopted Lowry's motion and also requested the dismissal of additional counts. A hearing on the motion was held on December 22, 2005. After the hearing, Grooms filed a motion to sever various counts. For the reasons stated below, the Court will deny Lowry's motion to dismiss in its entirety; deny Grooms' motion to dismiss in part and grant it in part; and grant Grooms' motion to sever.

## BACKGROUND

Defendant Lowry is an attorney licensed to practice law in Virginia. In documents provided to investors by both Defendants, Grooms is described as the program manager and agent for High Yield, Inc., a corporation located in St. Vincent and the Grenadines.

1

The original indictment in this matter was brought on February 17, 2005, and the facts alleged therein are as follows. Defendants convinced seven named and other unnamed investors to transfer a total of $2 million to attorney escrow accounts opened by Lowry. They fraudulently represented that the investors' funds would remain in Lowry's accounts safe and risk-free while earning high returns. Instead, Defendants caused the $2 million to be transferred in two $1 million batches to a South Carolina escrow account, where it was combined and subsequently transferred to an account at Norwest Bank in Minnesota.[1] When the investors repeatedly requested return of their money, Defendants represented that the money was still in Lowry's escrow account, that its return was only temporarily delayed, and that it would soon be returned. Throughout the scheme, Defendants played on the investors' Christian faith, which Defendants purported to share.

Count One of the original indictment charges that beginning in September 1999 and continuing through 2004, Defendants conspired to commit wire fraud. The alleged goal of the conspiracy was to obtain money from investors, and keep it as long as possible without raising suspicion. To this end, Defendants required the investors not to disclose their investment with Defendants to anyone, and represented that the investors' money was their own. As overt acts in furtherance of the conspiracy, Count One alleges, *inter alia*, that Lowry prepared an investor document entitled "High Yield, Inc., Profit Participation Agreement" that was signed by Grooms as Program Manager and by Lowry as attorney and escrow agent, and that Lowry prepared and distributed to investors of documents entitled "Charles G. Lowry Attorney Trust/Escrow

---

[1] Paragraph 9 of the Introduction to the superceding indictment alleges that some of the money was also transferred to offshore accounts before reaching the Minnesota account.

Agreement" and "Attorney Trust/Escrow Account Safekeeping Receipt Certificate."

Counts Two and Three charge that on or about February 23, 2000, and April 5, 2000, respectively, Defendants caused wire transfers from accounts in the Western District of Virginia to a South Carolina attorney escrow account for the purpose of executing the fraudulent scheme.

On June 23, 2005, the Government obtained a superceding indictment in this matter. Counts Two and Three are virtually identical in the original and superceding indictments. Count One is expanded in two principal ways. First, the conspiracy is alleged to have commenced in September 1998—one year earlier than alleged in the original indictment. Further, while the original indictment charged only a conspiracy to commit an offense against the United States, the superceding indictment also charges that Defendants conspired to defraud the United States by impeding the lawful functions of Treasury Department and the IRS in the assessment and collection of income taxes.

The superceding indictment also contains twelve additional charges. Count Four alleges that between August 1997 and March 2004, Grooms executed a scheme to defraud a health care program—Medicaid—by knowingly submitting fraudulent financial and income information to the Amherst County Department of Social Services ("Department"); Count Fourteen alleges that in February 1999 Grooms knowingly provided false and misleading information to the Department to obtain food stamp benefits. Counts 5–7 allege that for the calendar years of 1999, 2000, and 2003, Grooms willfully and unlawfully failed to file income tax returns. Counts 8 and 9 charge Lowry with willfully and unlawfully failing to file reports on June 30, 2000, and June 30, 2001, respectively, of overseas financial accounts which had a balance over $10,000; Counts 10–11 charge Grooms with the same offenses. Counts 12 and 13 charge that on October 13,

3

2000, and October 15, 2001, respectively, Lowry willfully made false representations on his 1040 forms to the IRS. Count 15 contains a civil forfeiture count against Lowry and Grooms for the unlawful conduct alleged in Counts 1–3, while Count 16 is a forfeiture count against Grooms for the Medicaid and food stamp fraud alleged in Counts Four and Fourteen.

## DISCUSSION

Defendants both argue that Counts 1, 2, 3, 8, 9, and 15 of the superceding indictment are barred by the applicable statutes of limitation. Grooms maintains that Counts 14 and portions of Counts 4 and 16 are also time-barred. Lowry also argues that Counts 1, 2, 3, and 15 should be dismissed because they are based on Lowry's alleged violation the Virginia Rules of Professional Conduct, and as such are insufficient as a matter of law. Defendants further contend that Count One as stated in the superceding indictment is duplicitous, and, finally, that Counts 4, 14, and 16 are improperly joined.[2]

### I. Statute of Limitations

#### A. Count One - Conspiracy

Defendants first argue that Count One is time-barred[3] because the "central purpose" of the conspiracy alleged was accomplished no later than May 30, 2000, when Defendants combined the investors' money and transferred it to the Minnesota bank—more than five years before the

---

[2] Grooms filed a separate motion requesting severance as the remedy for improper joinder of Counts 4 and 14, but neglected to assert the improper joinder of Count 16, which is a forfeiture count arising out of the violations alleged in these Counts.

[3] The parties agree that the applicable limitations period is five years under 18 U.S.C. §3282.

4

superceding indictment was brought. Quoting *United States v. Runnell*, 36 F. Supp. 2d 696, 700 (E.D. Va. 1998), Defendants emphasize that "[e]vidence of a cover-up alone is not sufficient to show that a conspiracy has continued."

The Government counters that the conspiracy alleged in Count One continued past the time of the May 2000 wire transfers and into 2004 by way of Defendants' ongoing fraudulent promises and representations to victims that their money remained safe in Lowry's attorney trust account and would soon be returned. (Gov't Resp. at 4). Defendants also allegedly concealed the fact that the investors' funds "was pooled money that belonged to many people." (Sup. Indict. §C ¶¶ 21, 22). These overt acts were integral to the fraudulent scheme and not mere cover-up activity because they lulled victims into a false sense of security, preventing them from contacting the authorities, and enabled Defendants to escape detection by third parties or law enforcement. (Gov't Resp. at 4; Sup. Indict. §B ¶3). The lulling and secrecy furthered one of Defendants' goals, which was to enrich themselves by exerting dominion and control over investor assets without the investors' knowledge. (Sup. Indict. §B ¶¶ 1,2).

When a conspiracy "contemplates bringing to pass a continuous result that will not continue without the continuous co-operation of the conspirators to keep it up, and there is such continuous co-operation," the conspiracy is a continuing offense. *United States v. Kissel*, 218 U.S. 601, 607 (1910). In determining whether a conspiracy is continuing, thereby preventing the statute of limitations from starting to run, a court must focus on the scope of the conspiratorial agreement. *Grunewald v. United States*, 353 U.S. 391, 397 (1957).

With respect to cover-up activity in particular, acts of concealment carried out to achieve the central purpose of a conspiracy would constitute a continuing offense, but concealment

5

intended solely to cover up an already executed crime would not constitute a continuing offense. *Grunewald*, 353 U.S. at 405. In *Grunewald*, the Court refused to sustain a conspiracy conviction that depended on the finding of an "implied subsidiary conspiracy to conceal." *Id.* at 399. No direct evidence of an agreement to conceal existed in the trial record. Instead, the evidence showed only that the conspirators took care to cover up their crime in order to escape detection and punishment, and thus did not justify the finding of a continuing conspiracy. *Id.* at 402.

The Court subsequently shed some light on when acts of concealment can cause a scheme to be ongoing. In *United States v. Sampson*, 371 U.S. 75 (1962), it reversed a district court's decision to dismiss an indictment, finding that a mailing sent to victims *after* defendants had already taken their money satisfied the mail fraud's statute requirement that the mails be used "for the purpose of executing" the fraudulent scheme. The defendants allegedly concocted a plan to obtain commission-type fees from businessmen by promising to help them obtain loans or sell their companies. *Id.* at 77. Defendants never intended to make and in fact did not make any substantial efforts to perform these promised services. *Id.* The scheme contemplated the use of propaganda, false promises, and half-truths by high-pressure salesmen to convince victims who had already paid defendants "advance fees" that their applications had been accepted, that defendants were using their best efforts to provide valuable services, that their complaints were being investigated, and that they had not been defrauded. *Id.* at 77-78. Part of this concealment involved sending victims a form letter that represented defendants were working on their applications. *Id.* at 78. "In short, the indictment alleged that the scheme, as originally planned by the defendants and as actually carried out, included fraudulent activities both before and after the victims had actually given over their money to the defendants." *Id.*

Although *Sampson* involves the application of specific statutory language in the mail fraud statute, it clearly explains when concealment and lulling activity renders a scheme ongoing—even after fraud victims have parted with their money. As did *Sampson*, this case involves the alleged use of false promises and half-truths to persuade victims who already parted with their money that they had not been defrauded and that defendants were performing as promised. Read in the light most favorable to the Government, the indictment sufficiently alleges Defendants' lulling and concealment activity to be within the scope of their agreement. It would be manifestly unjust to conclude that the statute of limitations started to run in Defendants' favor even while they executed an agreed scheme of deception preventing victims from discovering that they had been defrauded—and, therefore, also preventing any possibility of the authorities bringing them to justice.

The Government of course bears the burden of proving the alleged ongoing conspiracy at trial, but at this stage only the sufficiency of the indictment is being tested. Count One properly alleges a conspiracy continuing into the limitations period, and is not time-barred.[4]

## B. Counts Two and Three - Wire Fraud

Defendants next argue that Counts Two and Three of the superceding indictment are barred by the five-year statute of limitations because (a) the alleged wire transfers occurred more than five years before the superceding indictment and (b) the counts do not relate-back to the date of the original indictment for limitations purposes because the superceding indictment

---

[4] Because the Court finds that the indictment's allegation of ongoing conspiracy lasting until 2004 disposes of Defendants' limitations argument, it need not address whether Count One as amended would relate-back to the original indictment.

7

substantially broadens the penalties to which Defendants are exposed.

The five-year statute of limitations set forth in 18 U.S.C. § 3282 governs. The Court agrees with Defendants that in mail and wire fraud cases, the period of limitations begins to run from the date of the alleged mailing or interstate wire transfer. *See United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1398 (4th Cir. 1993) (mail fraud); *United States v. Eisen*, 974 F.2d 246, 263 (2d Cir.) (mail fraud), *cert. denied*, 507 U.S. 998 (1992); *United States v. Gross*, 416 F.2d 1205, 1210 (8th Cir. 1969) (wire fraud), *cert. denied*, 397 U.S. 1013 (1970). Fraudulent use of the wires or mails is the trigger point because only an unlawful interstate transfer creates federal jurisdiction:

> In applying the statute of limitations to mail and wire fraud the circuits appear uniformly to focus on the actual mailing and use of the wires....[N]o court has in any way suggested that the statute of limitations would be satisfied as long as any one element of the offense, e.g., part of the scheme, fell within the period. Requiring that the order-violating conduct consist of the mailing or wiring acknowledges these acts' role as the source of federal jurisdiction.

*United States v. Howard*, 350 F.3d 125, 128 (D.C. Cir. 2003).

The original indictment was filed on February 17, 2005, less than five years after the two wire transfers at issue, which allegedly occurred on February 23, 2000, and April 5, 2000. Defendants argue, however, that Counts Two and Three are barred because the June 23, 2005 superceding indictment was brought more than five years after the transfers. Relation-back to the filing date of the original indictment is inappropriate because the superceding indictment "materially broadens the first charging document" by adding new charges of tax fraud, Bank Secrecy Act violations, and forfeiture against both Defendants, and in Grooms' case, Medicaid

and food stamp fraud charges. (Def. Mot. Dismiss at 12).[5]

To support their position Defendants cite *United States v. Zvi*, 168 F.3d 49 (2d Cir. 1999), in which the Second Circuit held that numerous money laundering charges first brought in the Government's second and third superceding indictments did not relate back to an original indictment that charged only wire fraud and conspiracy to commit wire fraud. The court stated in support of its decision, "A superseding indictment will relate back to the date of the original indictment only if the superseding indictment does not 'broaden or substantially amend the original charges.'" *Id.* at 54 (quoting *United States v. Gengo*, 808 F.2d 1, 3 (2d Cir.1986)). Defendants pluck this statement out of context, from a case in which the relation-back of *new* charges was at issue, and apply it to this case, in which the relation-back of nearly identical, pre-existing charges is at issue.

Defendants also cite *United States v. Ratcliff*, 245 F.3d 1246 (11th Cir. 2001), in which relation-back of a conspiracy charge was deemed improper because the initial indictment alleged a 4-month drug conspiracy, while the superceding indictment alleged a 13-year conspiracy involving substantially higher drug weights. *Ratcliff* is inapposite because it involves the relation back of dramatically altered *charge*.

Defendants seek to draw from these cases a principle that *none* of the charges contained

---

[5] Defendants also argue that the superceding indictment "materially broadens" Counts Two and Three, because it "contains a new Introduction that is expressly incorporated into the wire fraud counts" which includes allegations of "complex financial transactions in the Caribbean and international wire transfers." (Def. Mot. Dismiss at 13). However, Counts Two and Three are substantially identical in the two indictments. The new factual allegations in the *Introduction* to the superceding indictment did nothing to alter the substance of the allegations in Counts Two and Three, which, according to Defendants' own limitations argument, charge discrete fraudulent transfers between domestic banks on specific dates.

in a superceding indictment can relate back to an original indictment—even if some of the charges in both documents are substantially identical—as long as *other* charges in the superceding indictment are ineligible for relation-back. In other words, the superceding indictment must relate back fully or not at all. Defendants cite no case that supports this principle.

Defendants' position is untenable in light of the policy reasons underlying statutes of limitations and the relation-back principle. Statutes of limitations "protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time" and encourage "law enforcement officials promptly to investigate suspected criminal activity." *Toussie v. United States*, 397 U.S. 112, 114-15 (1970). The core concern underlying statutes of limitation is providing defendants with timely notice that they "will be called to account for their activities and should prepare a defense." *United States v. Grady*, 544 F.2d 598, 601 (2d Cir. 1976). Relation-back comports with this concern because the effect of providing notice through the initial indictment is not reduced if charges in a superceding indictment are substantially the same. *See United States v. Gigante*, 982 F. Supp. 140, 155 (E.D.N.Y. 1997).

Therefore, as the Seventh Circuit recognized in *United States v. Ross*, 77 F.3d 1525 (7th Cir. 1996), the relevant question is whether specific charges alleged to be time-barred should relate back—not whether the superceding indictment should relate back as a whole:

> The mere restatement or superficial amendment of the *charge* in a subsequent indictment does not further prejudice the defendant and thus does not offend the purposes underlying the limitation period.... When the third superseding indictment was returned against [Defendant], twenty of the indictment's thirty-five counts were still within the five-year limitation period.

10

Regardless of any relation back, these charges clearly were not time barred.

      As to the fifteen counts that were beyond the limitation period...each had been timely handed down in either the original or the (first) superseding indictment and realleged in the second superseding indictment.... As explained above, these *counts* relate back to their original timely filing date so long as they neither materially broadened nor substantially amended the *counts* in the earlier indictments.

*Id.* at 1537 (emphasis added).

Counts Two and Three of the superceding indictment relate back to the date of the original indictment because they are substantially identical to the original wire fraud counts. They are not barred by the statute of limitations.

### C. Counts Four, Fourteen, and Sixteen

The Court declines at this time to rule on Grooms' motion to dismiss Counts Four and Sixteen, as the parties will address these limitations issues at a January 6, 2006 hearing.

As for Count Fourteen, the five-year limitations period prescribed by 18 U.S.C. § 3282 applies to Grooms' alleged violation of 7 U.S.C. §2024(b). *United States v. Hermis*, 980 F.2d 731, 1992 WL 363381 * 1 (6th Cir. 1992) (unpublished opinion). This charge was first brought on June 23, 2005, more than five years after Grooms allegedly provided false information to the Amherst County Department of Social Services to procure food stamps. Thus, Count Fourteen is time-barred, and shall be dismissed.

### D. Counts Eight, Nine, Ten, and Eleven - Willful Failure to Report Signature Authority of Foreign Accounts With Balances Exceeding $10,000

Defendants next argue that Counts 8–11 are subject to the three-year statute of limitations of 26 U.S.C. § 6531 rather than the five-year catchall statute of limitations for federal crimes, 18 U.S.C. § 3282.

11

Defendants are charged in these counts with failing to report their financial interests in, and signature authority over, financial accounts in foreign countries with balances exceeding $10,000 in aggregate value, in violation of 31 U.S.C. § 5314 (part of the "Bank Secrecy Act" or "Act") and 31 C.F.R. §§103.24, 103.27.

Although the alleged offenses are promulgated under Title 31 rather than Title 26 (the Internal Revenue Code), Lowry[6] argues that the three-year period applicable to "various offenses arising under the internal revenue laws" governs because (1) a principal purpose of the Bank Secrecy Act is to prevent United States citizens from evading income taxes, and, indeed, the indictment states that Lowry's purpose in failing to comply with the Act and its regulations was to obstruct the IRS in its efforts to collect income taxes; (2) the IRS collects the information required to be reported under the Act; (3) the broad choice of language in 26 U.S.C. §6531—"various offenses arising under the internal revenue laws"— evinces a Congressional intent to reach more broadly than the "Internal Revenue Code"; and (4) the Court must resolve all doubts in favor of applying the shorter of the two limitations periods. (Lowry Reply Memo.).

The issue of which limitations period governs offenses under 31 U.S.C. §§ 5314, 5322 and its accompanying regulations appears to be one of first impression.

The Court does not agree that the Act is properly characterized as principally a tool aiding enforcement of internal revenue collection. Congress explicitly stated in a "Declaration of Purpose" that the Act's goal is "to require certain reports or records where they have a high

---

[6] The following arguments appear in a special "Reply Brief" filed at the request of the Court by Lowry on December 28, 2005, and have not been expressly adopted by Grooms.

12

degree of usefulness in criminal, tax, or regulatory investigations or proceedings."[7] 31 U.S.C.A. § 5311 (West 2000). Thus, the Act is intended to strengthen law enforcement generally, not tax enforcement in particular. Although this particular indictment may focus on Lowry's tax-evasion, the Court must consider which statute of limitations governs *generally*.

The Court finds that the IRS' collection of foreign bank and financial account information has little bearing on the precise question at issue. The Secretary of the Treasury did assign the IRS an information-gathering role,[8] but nothing in the regulations indicates that the decision is motivated by anything other than administrative and practical convenience.

The Court also finds Lowry's textual argument unpersuasive. He urges that Congress would have chosen the defined phrase "Internal Revenue Code" if it wanted the limitations period contained in 26 U.S.C. § 6531 to apply only to offenses arising under Title 26; therefore, the term "internal revenue laws" must have a broader reach. However, "Internal Revenue Code" is defined only as "this title" (referring to Title 26 of the United States Code). 26 U.S.C.A. §7701(29). This definition appears to exclude regulations promulgated by the Commissioner of Internal Revenue. Thus, although the Court agrees that the phrase "internal revenue laws" likely has a broader reach than "Internal Revenue Code," the more reasonable interpretation is that it encompasses Code provisions and any other regulation or promulgation of the Commissioner that has the force and effect of law. The Court is not convinced that it includes laws codified in the "Money and Finance" section of the Code and regulations promulgated by the Secretary of

---

[7] An amendment that became effective October 21, 2001 inserted "or in the conduct of intelligence or counterintelligence activities, including analysis, to protect against international terrorism" before the period at the end.

[8] *See* 31 C.F.R. § 103.27(d).

the Treasury merely because they aid in the enforcement of internal revenue laws—among many other laws.

In light of the broad purpose of the Bank Secrecy Act, the Court finds that Counts 8–11 unambiguously do not charge offenses arising under the internal revenue laws. Thus, any rule of criminal law construction in favor of lenity is inapplicable. The catchall five-year limitation period of 18 U.S.C. § 3282 applies, and does not bar the June 30, 2000 and June 30, 2001 offenses alleged in the indictment.

### E. Count Fifteen - Forfeiture

The original indictment did not contain a forfeiture count. Count Fifteen of the superseding indictment, however, provides that in committing the violations alleged in Counts One, Two, and Three of the Indictment, Defendants shall forfeit to the United States certain property including $1,355,000 and two vehicles, derived from proceeds traceable to these offenses, pursuant to 18 U.S.C. § 981(a)(1)(C), as authorized by 28 U.S.C. § 2461.[9] The applicable limitations period is five years. 28 U.S.C. § 2462.

Defendants' limitations argument with respect to Count Fifteen is closely related to their arguments with respect to Counts One, Two and Three. As the Court has just found that the Government properly alleged a conspiracy continuing through 2004 in Count One, it will deny dismissal of Count Fifteen at this time. However, if Defendants are later acquitted of Count One, the Court will consider any renewed motion for dismissal of Count Fifteen.

---

[9] In the alternative, the indictment provides that if the property is unrecoverable for a variety of reasons as a result of an act or omission by Defendants, the United States shall seek forfeiture of any other of their property to satisfy the Judgment pursuant to 21 U.S.C. § 853(p).

Case 6:05-cr-00010-NKM    Document 84    Filed 01/05/06    Page 14 of 21    Pageid#: 327

## II. Insufficiency of Counts One, Two, Three, and Fifteen as a Matter of Law

Lowry next argues that Counts 1, 2, 3, and 15 should be dismissed because they are improperly based on a violation of the Virginia Rules of Professional Conduct ("Rules").

His position has no merit. The superceding indictment contains numerous allegations of fraudulent conduct that rely neither directly nor indirectly on any attorney obligation under the Rules, and that are more than sufficient to support the conspiracy and wire fraud counts. The indictment alleges, *inter alia*, that Defendants' fraudulently treated the investors' money as their own and concealed that it was pooled investor funds (Sup. Indict. Ct 1 §A ¶3, §C ¶22; Ct 2 ¶6(h),(i),(l); Ct 3 ¶5(j)(l)); deliberately concealed their control of—and profits from—this money from federal agencies (Sup. Indict. Ct 1 §A ¶4); lied to investors about the location of their money and the degree of investment risk (Sup. Indict. Ct 1 §B ¶¶4, 6, §C ¶21; Ct 2 ¶6(d),(e); Ct 2 ¶5(g),(h), ¶7); lied about rate of return investors could expect to receive (Sup. Indict. Ct 1 §B ¶5); and fraudulently misrepresented their intention to return the money in order to lull the worried investors (Sup. Indict. Ct 2 ¶8; Ct 3 ¶7). Lowry's alleged violation of Rule 1.15(a) of the Virginia Bar Rules of Professional conduct is discussed in the Introduction section of the superceding indictment, but is only obliquely referenced in Counts 1–3. *See* Ct 1, §C ¶14 ("On or about February, 2000, LOWRY opened an attorney trust account at Rock Hill Bank and Trust in Rock Hill, South Carolina, which existed only to facilitate the conspiracy. Lowry was not licensed to practice law in South Carolina."). *See also* Ct 2 ¶6(b); Ct 3 ¶5(a) (nearly identical allegations).

The prosecution has not ignored the Virginia Supreme Court's admonishment that professional rules are not to be used as a weapon against lawyers outside the administrative

15

disciplinary system. Rather, the prosecution relies on Lowry's alleged fraudulent conduct as a weapon against him in the criminal justice system.

### III. Count One is Duplicitous

Defendants argue that Count One of the superceding indictment is duplicitous because it charges Defendants with conspiracy (i) to commit an offense against the United States and (ii) to defraud the United States, in violation of 18 U.S.C. § 371.[10] Charging both breeds of conspiracy in the same count is *per se* duplicitous, they maintain.

Duplicity is "the joining in a single count of two or more distinct and separate offenses." *United States v. Hawkes*, 753 F.2d 355, 357 (4th Cir. 1985) (citing 1 Wright, Federal Practice and Procedure § 142 (2d ed.1982)).

Defendants rely on *United States v. Haga*, 821 F.2d 1036 (5th Cir. 1987) to support their position. In that case, the Fifth Circuit stated that a count charging an offense under 18 U.S.C. §371 "must have charged a conspiracy either to 'commit any offense' or to 'defraud the United States'; it cannot have charged both." *Id.* at 1043. Defendants also cite *United States v. Ellis*, 121 F.3d 908, 913 (4th Cir. 1997), in which the Fourth Circuit recognized that "18 U.S.C. § 371 criminalizes two types of conspiracies: conspiracies to commit an offense against the United States and conspiracies to defraud the United States."

What Defendants do not mention is that no other circuit or district court that has

---

[10] This statute provides in pertinent part:
> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose...each shall be fined under this title or imprisoned not more than five years, or both.

16

considered the issue has agreed with *Haga*. Indeed, the Fourth Circuit, though not presented squarely with the issue, has explained that the "two prongs of § 371 are not mutually exclusive" and collected the authority contra *Haga*:

> Because of the broad interpretation which has been given the "defraud" clause, §371's two clauses overlap considerably....[G]iven conduct may be proscribed by both of the section's clauses. In such a situation, the fact that a particular course of conduct is chargeable under one clause does not render it immune from prosecution under the other. When both prongs of § 371 apply to the conduct with which a particular defendant is charged, the government enjoys considerable latitude in deciding how to proceed....Many courts have even found it permissible to list both prongs of § 371 in a single indictment count rather than specifying whether the alleged conspiracy was one to defraud or one to commit an offense. See, e.g., *United States v. Bilzerian*, 926 F.2d 1285, 1301-02 (2d Cir.), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991); *United States v. Smith*, 891 F.2d 703, 711-13 (9th Cir. 1989), *amended* 906 F.2d 385 (1990), *cert. denied*,498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990); *May v. United States*, 175 F.2d 994 (D.C. Cir.), *cert. denied*, 338 U.S. 830, 70 S.Ct. 58, 94 L.Ed. 505 (1949); *United States v. Berlin*, 707 F. Supp. 832 (E.D. Va. 1989). *But see United States v. Haga*, 821 F.2d 1036 (5th Cir.1987) (holding indictment count may charge violation of either prong of § 371 but not both).

*United States v. Arch Trading Co.*, 987 F.2d 1087, 1092 (4th Cir. 1993).

Although it does not specifically address why charging both prongs of § 371 in a single count need not run afoul of the rule against duplicity, the Supreme Court's decision in *Braverman v. United States*, 317 U.S. 49, 54 (1942) provides the rationale for the majority rule: "The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for 'The conspiracy is the crime, and that is one, however diverse its objects.'" (quoting *Frohwerk v. United States*, 249 U.S. 204, 210 (1919)).

Applying this principle to § 371, the District Court for the District of Columbia explained that it is possible for allegations in an indictment and facts proved at trial to pertain to only one of its two prongs. However, there also exists "the possibility that any given course of alleged

criminal conduct might encompass a conspiracy both to commit offenses specifically defined elsewhere in the federal code and to defraud the United States." *United States v. Dale*, 782 F. Supp. 615, 620 (D.D.C. 1991).

This latter possibility applies to the facts of this case. The Government alleges an overall scheme whereby Defendants fraudulently moved investor funds through interstate wire transfers for their own personal enrichment, and concealed the existence and location of these funds from the United States to avoid assessment and collection of income taxes thereon. This alleged course of conduct encompasses offenses under both prongs of §371, and, thus, Count One is not duplicitous.

## IV. Improper Joinder of Counts Four, Fourteen, and Sixteen

Defendants argue that Count Four, which charges Grooms with supplying fraudulent financial and income information to obtain Medicaid benefits, and Count Sixteen, a forfeiture count based on this alleged conduct, are improperly joined in the superceding indictment.[11] Grooms asserts that the proper remedy for this misjoinder is severance.

Fed. R. Crim. P. 8(a) provides:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Neither the superceding indictment nor the Government in response allege any connection between the fraudulent investment scheme and Grooms' bilking of the Medicaid program. Thus,

---

[11] Because the Court has found that Count Fourteen is time-barred, the propriety of its joinder has been rendered moot and will not be addressed.

18

neither the "same act or transaction" nor the "common scheme or plan" prongs of R. 8(a) support joinder. *See United States v. Mackins*, 315 F.3d 399, 413 (4th Cir. 2003) (finding that joinder of drug conspiracy and money laundering counts with counts related to the use of counterfeit checks to open fraudulent bank accounts was improper under R. 8(a), noting the indictment's lack of allegations of "any explicit connection between the counterfeit check scheme and the drug and money laundering schemes").

The Government argues that joinder is proper, however, under the "same or similar character" prong of R. 8(a), because "GROOMS [sic] conduct in obtaining ... Medicaid payments is similar in character to his dealing with victims [of the investment fraud]. He consistently and continually misrepresented facts and used false statements." (Gov't Resp. at 9).

Any similarity between Grooms' conduct obtaining public assistance benefits fraudulently and defrauding investors exists only at a remote level of abstraction. In the first instance, Grooms allegedly defrauded a governmental agency, the Amherst County Department of Social Services, by making false statements mostly in written applications and forms about his income and assets. His provision of financial information was voluntary, a result of his individual decision to reach out to the Department. By contrast, the alleged fraudulent investment scheme involves Grooms' conspiring with another, Lowry, to obtain $2 million in funds from individual investors (at least some of whom were Lowry's former clients) by making false promises about the risk and expected returns of the investment and by playing on their Christian faith; it also involves Defendants' willful failure to fulfill mandatory reporting obligations to the Internal Revenue Service and the Department of the Treasury. The only similarity between these obviously disparate offenses is that Grooms made false statements (or

19

omitted material statements) with the goal of personal enrichment, which is not sufficient for joinder under Rule 8(a).[12] *See United States v. Halper*, 590 F.2d 422, 430 (2d Cir. 1978) (finding that a Medicaid fraud charge and a personal income tax evasion charge both involving alleged attempts to manipulate those whom Defendant employed for his personal enrichment were not sufficiently similar in nature to permit joinder, where the charges arose out of different transactions and involved different funds); *United States v. Buchanan*, 930 F. Supp. 657, 665-667 (D.C. Mass. 1996) (stressing that "[a] vague thematic connection among offenses may not support joinder," and finding improper under R. 8(a) the joinder of charges of misapplication of bank funds related to defendant's status as bank president, and money laundering charges relating to defendant's status as principal in partnership, even though both offenses had as their goal the defendant's personal enrichment and were accomplished through fraudulent representations and defrauding others of money).

The Court agrees that Counts Four and Sixteen were improperly joined. The appropriate remedy is to sever these counts. *See* 1A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 145 (3d ed. 1999) (collecting cases).

## CONCLUSION

Count Fourteen is time-barred, and shall be dismissed in an appropriate order to follow. The Court declines to rule on dismissal of Counts Four and Sixteen at this time, but does agree

---

[12] The only hint that Lowry even knew of Grooms' alleged public assistance fraud is alleged in ¶¶ 11, 12 of Count Four, which states that on September 30, 2002, Grooms faxed from Lowry's office to the Department a check made payable to "Chuck Grooms" in the amount of $500 in order to corroborate his income. This falls far short of an allegation that the two men conspired to carry out the Medicaid and food stamp fraud.

that they were misjoined and should be severed. None of Defendants' other arguments in favor of dismissing various counts of the indictment has merit, and will be denied.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a copy of this Opinion to all counsel of record.

ENTERED: _____
U.S. District Judge

_January 5, 2006_
Date

Case 6:05-cr-00010-NKM   Document 84   Filed 01/05/06   Page 21 of 21   Pageid#: 334